THE CONTINENTAL INSURANCE          )
CO.,et. al.                        )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )  Case No. 2:05-CV-156
                                   )          (2:05-CV-210)
                                   )          (Consolidated)
NORTHERN INDIANA PUBLIC            )
SERVICE COMPANY, et. al.           )
                                   )
          Defendants               )
****************************** )
NORTHERN INDIANA PUBLIC            )
SERVICE COMPANY,                   )
                                   )
          Plaintiff,               )
                                   )
     V.                            )
                                   )
CNA INSURANCE, et. al.             )
                                   )
          Defendants               )

OPINION AND ORDER

This matter is before the court on the Joint Motion to
Continue Stay [DE 190] filed by Continental Insurance Company,
Columbia Casualty Company, and NIPSCO, on June 25, 2010; the
Motion for Leave to Amend Complaint [DE 197] filed by NIPSCO on
December 16, 2010; and the Motion to Continue Stay [DE 198] filed
by NIPSCO on December 16, 2010.  For the following reasons, the
Joint Motion to Continue Stay [DE 190] is DENIED AS MOOT; the
Motion for Leave to Amend Complaint [DE 197] is GRANTED; and the
Motion to Continue Stay [DE 198] is DENIED.

Background

This is a declaratory judgment action to determine the
parties' rights and obligations under various insurance policies

issued to the defendant, Northern Indiana Public Service Company (NIPSCO). NIPSCO operates several power plants in Indiana that burn coal to create energy and generate waste by-products. NIPSCO hired a hauling company, Brown, Inc., in the 1960s to dispose of its waste coal combustion by-product. Brown disposed of the waste in a restricted waste facility in the Town of Pines, Indiana, through 2001. In 2000, residents of the Town of Pines noticed that their drinking water "looked funny" and began complaining to the Indiana Department of Environmental Management (IDEM). IDEM contacted the United States Environmental Protection Agency (EPA), who found elevated levels of boron and molybdenum in wells that supplied drinking water to the residents of the Town of Pines.

On January 24, 2003, NIPSCO and Brown entered into an Administrative Order of Consent (AOC I), which required NIPSCO to install municipal water service for use by the residents of the Town of Pines and to pay certain costs. In 2004, NIPSCO and Brown entered into a second Administrative Order of Consent (AOC II), requiring NIPSCO to complete a comprehensive investigation into the nature and extent of the contamination. AOC I has been completed, but the work required under AOC II is ongoing. As part of AOC II, EPA must approve NIPSCO's remediation plan before any remediation begins. Once approved, the remediation plan will be documented in a Record of Decision prepared and issued by EPA. The Record of Decision is expected to be complete in 2012.

At all relevant times, NIPSCO was insured by several providers, including primary providers Continental Insurance Company and Columbia Insurance Company (the CNA companies), and excess providers Allianz Global Risks U.S. Insurance Company, American Home Assurance Company, and American Empire. The American Empire and American Home policies had a $500,000 self-insured retention which must be fully exhausted before the insurer's liability attaches.

The CNA companies filed a declaratory action against NIPSCO to determine the parties' rights and obligations. NIPSCO filed a counterclaim for bad faith and filed a separate action against the primary insurers and others, which later was consolidated with this case. In August 2006, the court issued a stay to facilitate settlement until NIPSCO's liability was resolved under two pending lawsuits, one brought by the Hoosier Environmental Council (HEC) and Loyd v. Northern Indiana Public Service Co., et al. Continental, a primary insurer, and NIPSCO reached a settlement agreement, and Continental moved to dismiss its claims in this action, including Continental's claim against American Empire.

On December 16, 2010, NIPSCO filed its Motion to Amend, arguing that an amendment is necessary to preserve its claims against the non-settling insurers including American Empire and American Home. NIPSCO asserts that the excess insurers are liable to the extent that NIPSCO's losses exceed the terms of the policies it holds with the primary insurers. That same day,

3

NIPSCO moved to continue the stay to facilitate settlement with the excess insurance providers. The court will now address these motions.

## Discussion

As an initial matter, NIPSCO's motion to continue the stay [DE 190] requests an extension of the stay through November 8, 2010. The court extended the stay through December 15, 2010, in its December 7, 2010 order. Therefore, DE 190 is DENIED AS MOOT.

NIPSCO filed a subsequent motion to extend the stay of the proceedings beyond December 15, 2010, through January 17, 2011, to facilitate settlement discussions with the remaining insurers. The plaintiff, American Empire, opposes this motion, arguing not only that the motion is moot, but that the stay interferes with its ability to conduct discovery and develop its defenses. Although the extension NIPSCO requests has expired, NIPSCO represents in its reply brief that the stay should be extended through the end of 2012, the anticipated date for release of the EPA Record of Decision.

A court has incidental power to stay proceedings, which stems from its inherent power to manage its docket. Landis v. North American Co., 299 U.S. 248, 254-55; 57 S.Ct. 163, 81 L.Ed 153 (1936); Walker v. Monsanto Co. Pension Plan, 472 F.Supp.2d 1053 (S.D. Ill. 2006). The decision to grant a stay is committed to the sound discretion of the court and must be exercised consistent with principles of fairness and judicial economy. Brooks v. Merck & Co., 443 F.Supp.2d 994, 997 (S.D. Ill. 2006); Ruther-

ford v. Merck & Co., 428 F.Supp.2d 842, 845 (S.D. Ill. 2006);
George v. Kraft Foods Global, 2006 U.S. Dist. LEXIS 92886, *4
(S.D. Ill. 2006).  When deciding whether to issue a stay in a
civil proceeding, the court balances the competing interest of
the parties and the judicial system.  Landis, 299 U.S. at 254-55,
57 S.Ct. at 166.  "To order a stay of proceedings, it must be
clear that the interests of justice require it, that adjudication
of the claim would be a waste of judicial effort and that the
plaintiff will not be substantially harmed by the delay."  Hess
v. Gray, 85 F.R.D. 15, 27 (N.D. Ill. 1979).

Although the relief NIPSCO requests renders its motion moot,
rather than denying the motion on this ground, requiring the
parties to file and brief a new motion on the same issue, the
court will address the motion to stay on its merits.  The stay
has been imposed on these proceedings since August 25, 2006,
restricting American Empire's ability to conduct discovery.
American Empire is concerned that any further lapse will deplete
the availability of discoverable information.  NIPSCO similarly
argues in its reply brief that it will suffer prejudice if the
stay is denied because of the risk that discovery would prejudice
NIPSCO in EPA's pending suit against it.  NIPSCO believes that
this suit should not move forward until its total liability
resulting from the environmental contamination incident is fixed.

Courts generally have postponed rulings in indemnity suits
where the underlying liability has yet to be established.  See
Talevski v. Carter, 2006 WL 1389334, *2 (N.D. Ind. May 16, 2006)

(citing Lear Corp. v. Johnson Electric Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003)).  However, this case presents a unique challenge because American Empire's liability, to some extent, has been determined by NIPSCO undertaking phase I of cleaning the environmental contamination and the final disposition of the Loyd and HEC lawsuits.  Further delay may inhibit American Empire's ability to conduct discovery which might shield it from liability resulting from these events.  NIPSCO has not made it clear how it would suffer prejudice from lifting the stay.  In its initial motion, NIPSCO advocates that the stay should continue to facilitate settlement negotiations.  However, this justification does not make it clear that the interests of justice require continuation of the stay or that it would be a waste of judicial resources to resume discovery.  See Hess, 85 F.R.D. at 27 ("To order a stay of proceedings, it must be clear that the interests of justice require it, that adjudication of the claim would be a waste of judicial effort and that the plaintiff will not be substantially harmed by the delay.").  Lawsuits often continue while the parties discuss settlement.  It was not until NIPSCO filed its reply brief that it raised the possibility that it would suffer prejudice in EPA's pending suit against it.  However, a party cannot raise a new argument in its reply brief, and to the extent that it does, the argument is deemed waived. Hernandez v. Cook County Sheriff's Office, ___ F.3d ___ , 2011 WL 650752, *5 (7th Cir. 2011); Administrative Committee v. Alexander, 2001 WL 32874, *5 (N.D. Ind. Jan. 12, 2001; Walker v.

6

Wallace Auto Sales, Inc., 155 F.3d 927, 930 (7th Cir. 1998).
Furthermore, if allowing discovery to continue will impose an undue burden on NIPSCO in EPA's suit against it, the proper course would be to move for a protective order, not to prolong the stay and prohibit American Empire from conducting any discovery, particularly as it pertains to the expenses that already are fixed.  Therefore, NIPSCO's motion to stay, as it applies to American Empire, is DENIED.

NIPSCO also moves the court for leave to amend its complaint to omit the CNA companies that NIPSCO has reached a settlement agreement with and to name Allianz, American Home, or American Empire as parties.  American Home and American Empire, who currently are parties to this suit because of one count in CNA's complaint, responded that allowing the amendment would be inequitable because of NIPSCO's delay in naming them as parties, and futile because NIPSCO did not exhaust its self-insured retention under the policies.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d. 222 (1962).  This Circuit has recognized that because the complaint merely serves to put the defendant on notice, it should be freely amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant. Jackson v. Rockford Housing Authority,

213 F.3d 389, 390 (7th Cir. 2000).  The decision of the court to
deny leave to amend a complaint is an abuse of discretion "only
if 'no reasonable person could agree with the decision.'" Winters
v. Fru-Con, Inc., 498 F.3d 734, 741 (7th Cir. 2007)(quoting Butts
v. Aurora Health Care, Inc., 387 F.3d 921, 925 (7th Cir. 2004);
Ajayi v. Aramark Business Services, 336 F.3d 520, 530 (7th Cir.
2003).

Because the complaint merely serves to put the defendant on
notice, it should be freely amended as the case develops, as long
as amendments do not unfairly surprise or prejudice the defen-
dant.  Jackson, 213 F.3d at 390.   However, a motion to amend is
more likely to be denied if it takes place at a relatively late
stage in the proceedings. Winters, 498 F.3d at 741.  See also
James v. McCaw Cellular Communications, Inc., 988 F.2d 583 (5th
Cir. 1993) (holding that the district court did not abuse its
discretion in denying plaintiff's motion to amend where motion
filed almost 15 months after original complaint, ten months after
joinder deadline, five months after deadline for amendments, and
three weeks after defendant filed motion for summary judgment).
The moving party bears the burden to show some valid reason for
neglect and delay in seeking to amend the complaint. Butts, 387
F.3d at 921.  See also NL Industries, Inc. v. GHR Energy Corp.,
940 F.2d 957 (5th Cir. 1991)(holding that court did not abuse its
discretion in denying motion for leave to file second amended
complaint where plaintiff sought to amend its pleading two years
after it first brought defendant into litigation and after defen-

dant had requested summary judgment, but plaintiff provided no good reason for not acting sooner).

Leave to amend may be denied at the district court's discretion for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182, 83 S.Ct. at 230. "The court may deny a motion to amend based, at least in part, on the fact that the motion to amend was filed after the final deadline set by the court for the filing of amendments." 61A Am. Jur. 2d Pleading §779 (2007). See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314 (5th Cir. 1991)(finding no abuse of discretion where motion to amend filed after final deadline set by court for filing of amendments and amendment of pleadings under circumstances would provide no benefit to movants).

In addition, the court may deny leave because the amendment is futile. Bethany Phamacal Company, Inc. v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001). Futility generally is measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), unless a summary judgment motion is pending, permitting futility to be shown with reference to the entire summary judgment record. Peoples v. Sebring Capital Corp., 209 F.R.D. 428, 430 (N.D. Ill. 2002).

First, the court must address whether NIPSCO's motion to amend is timely. NIPSCO waited approximately five years to move

to amend its complaint to name American Empire, American Home, and Allianz as parties.  Prior to moving to amend, NIPSCO advocated that it was seeking insurance coverage from the policies that insured it from January 1, 1978 through March 1, 1979.  Now, NIPSCO argues that the damage was caused over a greater period of time, through 2001, and additionally requests coverage for the damage resulting during this time.  Although NIPSCO waited a substantial time to amend its complaint, a delay in moving to amend a pleading is not itself a sufficient basis to deny the claim, absent unfair surprise or prejudice.  Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992).  A long delay may, however, create a presumption of prejudice and against granting the party leave to amend.  Perrian, 958 F.2d at 195.  The court must weigh the prejudice to the parties, the burden on the judicial system that would be caused by the prolonged delay, and the disposition of the case.  Perrian, 958 F.3d at 195.  Generally, a last minute motion to amend filed near the trial date will not be granted, particularly when it changes the theory the party is proceeding under.  Perrian, 958 F.3d at 195.

Although the present matter has been pending since 2005, a stay has been imposed since 2006, prohibiting this case from moving closer to final disposition.  The parties have not conducted discovery, and it would be difficult to find that the insurance companies would be prejudiced when essentially nothing has occurred in this case, there is no trial date set, and discovery has not been conducted.  Furthermore, American Home and

American Empire have been parties to this suit since it commenced, and therefore have diminished grounds for claiming prejudice.  Their involvement has made them privy to everything that has occurred in this case. Absent a display of prejudice or burden, NIPSCO's motion to amend cannot be denied on timeliness alone.

However, American Empire and American Home alternatively argue that NIPSCO cannot proceed against them because NIPSCO did not allege that it exhausted the self-insured retention under the American Empire and American Home insurance policies.[1]  American Home and American Empire are excess insurance providers on NIPSCO's claim.  Their liability rises only when the primary insurer's coverage is exhausted.  Allstate Insurance v. Dana Corp., 759 N.E.2d 1049, 1061-62 (Ind. 2001); Indiana Gas Co., Inc. v. Aetna Casualty & Insurance Co., 951 F.Supp. 811, 814-15 (N.D. Ind. 1996)(overturned for lack of jurisdiction).  Indiana law appears somewhat convoluted with regard to whether a settled dispute with the primary insurer is considered exhaustion of the policy.  American Home and American Empire cite to Indiana Gas for the proposition that an insured who settled with its primary insurers for less than the policy limits was not entitled to recovery under the excess policy for the amount that exceeded the terms of the primary policy.  Indiana Gas, 951 F.Supp. at 814.

_____

[1] Because the parties have not consented to the jurisdiction of the magistrate judge, this court cannot rule on any dispositive matters.  The discussion of the merits of NIPSCO's proposed amended complaint is confined to whether it appears futile at this juncture for purposes of Rule 15(a).  The final decision must be made by the assigned district judge.

The court explained that settlement with the primary insurer removed the primary insurer's incentive to defend in good faith and represent the interests of the excess carrier in the pending lawsuit, concluding that the excess carrier had good reason to be unwilling to accept liability unless the primary policy had been paid. Indiana Gas, 951 F.Supp. at 814; United States Fire Ins. Co. v. Lay, 577 F.2d 421, 423 (N.D. Ind. 1996); Ryder Truck Lines v. Carolina Cas. Ins. Co., 385 N.E.2d 449, 452 (Ind. 1979).

More recently, the Indiana Supreme Court addressed a case where the insured became subject to government and third-party lawsuits, resulting in substantial environmental clean-up costs. Dana Corp., 759 N.E.2d at 1052. The insured settled with the primary insurer, and the excess insurer disputed whether the policy had been exhausted to the full extent because the property damage and personal injury limits were not both paid in full. Dana Corp., 759 N.E.2d at 1052. The court explained that only the policy limit applicable to the claim needed to be exhausted — the limit for property damage. Dana Corp., 759 N.E.2d at 1062. In a footnote, the court stated that "[w]hether Dana's settlement with [the primary insurer] actually exhausted the underlying limits is also irrelevant; if it did not, then Dana is self-insured up to the applicable limits." Dana Corp., 759 N.E.2d at 1063, n.10. In Sadler v. Auto-Owners Ins. Co., 904 N.E.2d 665, 669 (Ind. App. 2009), the court explained that "[t]he Dana case also tells us that a settlement of a claim rather than litigation

to conclusion does not prohibit a subsequent claim against another insurer."

For this reason, it appears that the recent trend in Indiana law is to accommodate claims against the excess insurer after the claim has been settled with the primary insurer. To the extent that NIPSCO settled with the primary insurers for less than the applicable limits, NIPSCO is considered self-insured up to the policy limits. Dana Corp., 759 N.E.2d at 1063 n.10. Although American Empire and American Home's liability does not attach until the policy limits of the primary insurer's liability has been exhausted in its entirety, whether it is because the primary insurer paid the full amount, or because NIPSCO settled for less than the policy terms and is liable for the amount in excess of the settlement up to the policy limits, American Empire and American Home remain liable for claims in excess of the primary policy amount. NIPSCO's failure to procure a settlement to the full extent of the policy limits does not preclude the secondary insurers from being held liable for the amount in excess of the terms of the primary insurance, as American Empire and American Home suggest.

Although American Empire and American Home are liable for claims in excess of the primary insurer's policy, NIPSCO does not allege that its losses do, in fact, exceed the amount of coverage provided under the policy it held with its primary insurers and the $500,000 self-insured retention in the American Empire and American Home policies. Rather, NIPSCO's amended complaint more

generally states that "[s]ome of the defendants, as umbrella and/or excess carriers, are obligated under each of the umbrella and/or excess policies, subject only to the limits of liability, if any, to pay in full NIPSCO's legal liability when the limits of the applicable policies are exhausted."  American Empire and American Home argue that NIPSCO may not pursue a claim based upon a mere possibility that its aggregate liabilities may some day exceed the terms of the primary insurance policy.  Although American Empire and American Home properly cite the relevant law, at this stage NIPSCO's amended complaint must only pass muster under the standard for adjudicating a motion to dismiss.

Rule 12(b)(6) allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" to show that a pleader is entitled to relief.  The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a deci-sion issued in May 2009.  While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands some-thing more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  In order to survive a 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  This pleading standard applies to all civil matters.  Iqbal, 129 S.Ct. at 1953.

Although NIPSCO's proposed amended complaint does not state that its losses exceed the primary insurer's policy limits, the complaint sufficiently puts the excess providers on notice of the claim against them.  It is ascertainable from the face of the complaint that NIPSCO is alleging that the excess insurance companies are liable for any loss exceeding the terms of the primary insurance policy.  Although NIPSCO does not plead a specific amount of loss, such is not the requirement of Rule 12(b)(6).  Rather, a party meets its burden under Rules 12(b)(6) and 8(a) when there is sufficient factual matter, which, if accepted as true, would apprise the opposing party of the claims made against it.  American Home and American Empire can readily ascertain that NIPSCO requests payment from the insurance policies it held with these companies to compensate it for the environmental contamination it was subjected to clean up.  Whether or not NIPSCO's losses exceed the primary policy is an issue best reserved for a summary judgment motion.  It is sufficient that the amended complaint alerts the excess insurers to their potential liability.  Therefore, NIPSCO's motion to amend is GRANTED.

_____

Based on the foregoing, the Joint Motion to Continue Stay [DE 190] filed by Continental Insurance Company, Columbia Casu-

alty Company, and NIPSCO, on June 25, 2010 is DENIED AS MOOT; the

Motion for Leave to Amend Complaint [DE 197] filed by NIPSCO on

December 16, 2010 is GRANTED; and the Motion to Continue Stay [DE

198] filed by NIPSCO on December 16, 2010, is DENIED.

ENTERED this 5th day of April, 2011


                                  s/ ANDREW P. RODOVICH
                                     United States Magistrate Judge